## THE PEOPLE *v.* JESUS YSLAS.

IMPEACHING A WITNESS.—*Evidence of bad character for chastity is not admissible for the purpose of impeaching the testimony of a witness.*

SAME.—An inquiry into the character of a witness for the purpose of impeaching his testimony must be restricted to his character for truth and veracity.

AN ASSAULT.—The statutory definition of an assault is substantially the same as at common law.

SAME.—An intent to commit violence, accompanied by acts which, if not interrupted or avoided by the retreat of the other party, would be followed by personal violence, amounts to an assault.

SAME.—It is not indispensable to the commission of an assault that the assailant should be at any time within striking distance.

TESTIMONY IN CRIMINAL CASE.—On trial for an assault with intent to commit murder it appeared that the defendant committed the assault in the prosecutrix's house, and the prosecutrix immediately escaped and went to a butcher shop a few rods away, and that the defendant followed her thither after some few minutes had elapsed ; *Held*, that what occurred between the prosecutor and defendant at the butcher's shop was admissible in evidence, at least on the question of intent.

WHAT IS AN ASSAULT.—To constitute an assault the party must have the intent to strike, the ability to do so, and must make the attempt.

CURREY, J.

IMPEACHMENT OF WITNESS.—Testimony to impeach a witness should not be confined to his character for truth and veracity, but should extend to his entire moral character, and a witness may be impeached by testimony showing that his general moral character is bad.

APPEAL from the County Court of Santa Clara County.

The testimony for the prosecution showed that the defendant entered the house of the prosecutrix and called for liquor, and was refused. He insisted, and it was given to him, when he

called on the prosecutrix to drink, and upon her declining to do so, throwed the tumbler on the floor, threatened to kill her, and seized a hatchet and started towards her having it raised in a threatening attitude. The prosecutrix, when the defendant had approached within seven or eight feet of her, fled through the door into an adjoining room, and locked the door after her. The defendant then went up to the door and struck it with his hatchet. The prosecutrix, after waiting a few minutes, passed through another door and went to a butcher shop a few rods distant. The defendant, after waiting a short time, followed the prosecutrix to the butcher shop and again threatened her life.

The attorney for the defendant asked the Court to give the following instructions, which were refused:

"If the jury believe from the evidence that when the defendant rose from taking the hatchet in his hand, and before raising it in a striking posture, the prosecutrix, on whom the assault is alleged to have been made, had left the room in which he and she were, and shut the door, they will find the defendant not guilty as charged in the indictment, because whatever may have been his intention in taking hold of the hatchet, there was an absence of ability to carry the same into effect.

"If the jury believe from the evidence that defendant, while with the hatchet in his hand, did not attempt to throw the same at the prosecutrix, and did not raise it to strike her while within striking distance, they will find him not guilty as charged in the indictment.

"The testimony of the witnesses as to what took place in the butcher shop does not go to sustain the charge in the indictment, because the defendant had not at the time or there any weapon in his hand as charged in the indictment."

The other facts are stated in the opinion of the Court.

*J. Alexander Yoell*, for Appellant, referred to the following authorities on the question of the impeachment of the witness: 1 Greenleaf on Ev., note 2, p. 59; *People* v. *Rector*, 19 Wend.

570; *People* v. *Murphy*, 14 Mass. 387; *State* v. *Boswell*, 2 Dev. 209; 1 Hill, S. C. 251.

*J. G. McCullough, Attorney-General,* for the People.

*An assault is committed when the defendant, with the intent, makes the offer to commit the violence, with the apparent though not the actual power, not necessarily within striking distance, but so near as to put a man of ordinary firmness not in actual but in well founded apprehension of peril.* And these are the true ingredients of the common law and of the statutory assault. In both there is the " unlawful attempt, coupled with the present ability to commit the injury," etc.

And we refer to some authorities, and especially to Bishop, the most philosophical criminal law writer of the age : *State* v. *Davis*, 1 Iredell, N. C. 125; 1 Whar. Crim. Law, §§1,241–3; 2 Bishop's Crim. Law, §§32, 36, 37, etc.; 1 Bishop's Crim. Law, §409.

The defendant in such a case as this had no right to show the prosecutrix was unchaste. If the offer was because she was the party injured, then it was inadmissible. (3 Greenleaf on Ev., §27.) If to impeach her like any other witness, then also the better opinion is it was inadmissible. The evidence as to character in every case, whether of party or witness, should bear some analogy and have some reference to the nature of the charge. In this case the trait in the character to be inquired into was that of the general reputation for truth and veracity *only* of the prosecutrix. (1 Greenleaf on Ev. §461 *n;* 1 Wharton on Crim. Law, §814; *People* v. *Josephs*, 7 Cal. 129.)

By the Court, Sanderson, C. J.

The defendant was indicted for an assault with intent to commit murder, tried and convicted as charged.

At the trial the defense proposed to impeach the testimony of the prosecutrix by proving her to be of a notoriously bad character for chastity. The testimony was rejected by the Court, and we are asked to reverse the judgment upon the

ground that the decision of the Court in that respect was erroneous.

That the ruling of the Court is sustained by the great mass of authority is not disputed by counsel for appellant; but it is insisted, notwithstanding, that the better reason is opposed to it. We do not deem it necessary to enter into a discussion as to what the law ought to be upon this subject. There is much force in the argument made in support of the theory that the inquiry into the character of a witness, for the purpose of impeaching his testimony, ought not to be restricted to his reputation for truth and veracity ; but the rule is too well settled the other way for us to disturb it. If it is thought that the ends of justice would be subserved by changing the rule so as to make the entire moral character of the witness in the estimation of society the subject of inquiry, let the change be made by the Legislature, and not the judiciary.

The instructions asked for on the part of the defendant were properly refused. The first and second seem to be founded upon the idea that there is a substantial difference between an assault at common law and an assault as defined in our statute. In our judgment no such distinction exists. The common law definition of an assault is substantially the same as that found in the statute. (1 Russell on Crimes, 748 ; 1 Wharton, Section 1,241.) The vice in the two instructions under consideration is found in the idea which they countenance that there may be an intermediate point between the commencement and the end of an assault where if the assailant is interrupted either by the escape of the party assailed or the interference of bystanders, the offense is thereby made incomplete.

In order to constitute an assault there must be something more than a mere menace. There must be violence begun to be executed. But where there is a clear intent to commit violence accompanied by acts which if not interrupted will be followed by personal injury, the violence is commenced and the assault is complete. Thus riding after the prosecutor so as to compel him to run into a garden for shelter, to avoid

being beaten, was held to be an assault. (*Mortin* v. *Shoppee*, 3 Car. & Payne, 374.)   So where the defendant was advancing in a threatening attitude, with intent to strike the plaintiff, so that his blow would in a second or two have reached the plaintiff, if he had not been stopped, although when stopped he was not near enough to strike, it was held that an assault had been committed. (*Stephen* v. *Myers*, 4 Car. & Payne, 349.)   It is not indispensable to the commission of an assault that the assailant should be at any time within striking distance.   If he is advancing with intent to strike his adversary and comes sufficiently near to induce a man of ordinary firmness to believe, in view of all the circumstances, that he will instantly receive a blow unless he strike in self defense or retreat, the assault is complete.   In such a case the attempt has been made coupled with a present ability to commit a violent injury within the meaning of the statute.   It cannot be said that the ability to do the act threatened is wanting because the act was in some manner prevented.   In the present case the defendant was guilty of an assault if he advanced on the prosecutrix in such a manner as to threaten immediate violence, notwithstanding she succeeded in making her escape without injury.

The third instruction asked for by the defendant was also properly refused because what occurred in the butcher shop appears to have been a part of the *res gestæ*, and at least was admissible on the question of intent.

The third instruction asked for by the prosecution, to the effect that the assault was complete if the defendant had the intent to strike and the ability to do so, when by itself considered, is a little inaccurate in so far as it can be said to ignore the idea of an attempt.   But this portion must be read in connection with the residue of the charge, which sufficiently informed the jury as to what constituted the attempt, to wit, the defendant's rushing toward the prosecutrix with the axe in his hand in such a manner as to show that he could and would have struck her had she not escaped through the door.

Taking the entire charge together, we do not think the jury could have misapprehended the law of the case.

As to the question whether the verdict is sustained by the evidence, it is sufficient to say that the testimony is conflicting.

Judgment affirmed.


CURREY, J., concurring specially.

The rule restricting the examination of impeaching witnesses to the general character for truth and veracity of the witness sought to be impeached, I do not understand to be settled to the exclusion of the broader inquiry as to his general character or general moral character, and in my judgment the examination ought not to be so restricted. In England the inquiry in such cases involves the entire moral character of the witness attempted to be impeached, and the estimation in which he is held in society. (2 Taylor's Ev. Secs. 1,082, 1,083.) The authorities on this point may be found collated in 3 American Law Journal, 145, where it is said, " So far as the decisions of the Courts of England are concerned, they are unanimous to the point that the true criterion of the credit of the witness, is his general character and conduct, and not his character for truth and veracity."

In New York the rule allowing an inquiry respecting the general character of the witness sought to be impeached obtains. (*People* v. *Mather*, 4 Wend. 229; *People* v. *Rector*, 19 Wend. 579; *Johnson* v. *People*, 3 Hill, 178; *Fulton Bank* v. *Benedict*, 1 Hall, 558.) In *Fulton Bank* v. *Benedict*, Mr. Justice Oakley—a very able Judge—held the true rule to be to inquire of the impeaching witness his means of knowing the general character of the witness impeached, and whether from such knowledge he would believe him under oath. And he further said, " To inquire only as to general character for truth seems too narrow. His general character for truth and honesty must be the ground of his general credit as a witness."

In Kentucky the rule is to allow an inquiry as to the general character of the witness attempted to be impeached.

(*Hume* v. *Scott*, 3 A. K. Marsh. 261; *Blue* v. *Kibby*, 1 Monroe, 195.) In South Carolina (*Anonymous*, 1 Hill, 258,) the Court of Appeals of that State held that the inquiry need not be restricted to general character for truth only, but that the true inquiry was as to the witness' general character. The Court says : " If the witness assailed is of general bad moral character, his general character, in legal contemplation, is a bad one in all respects. For a general bad moral character can only exist where a man's vices so far preponderate over his virtues as to force the conclusion in the mind of a majority of his acquaintances that he is a bad man." In North Carolina, as early as 1804, it was decided that a witness might be discredited by proving him of bad moral character, and that the inquiry should not be confined to the general character of the witness for veracity. (*State* v. *Stallings*, Martin & Haywoods, 490,) and twenty-five years afterwards the Supreme Court of that State reiterated the rule in an opinion of great cogency and power. (*State* v. *Boswell*, 2 Dev. 210.) The same rule is laid down by the Supreme Court of Pennsylvania in *Wilke* v. *Lightner*, 11 Serg. and Rawle, 198.) Mr. Chief Justice Pennington, of New Jersey, in illustration of the fallacy of the rule confining the inquiry to the character of the witness for veracity, said : " Suppose a witness is a notorious cheat, sharper and swindler, although nothing has been alleged against him on the ground of his veracity under oath, is he to stand in point of credit on equal ground with a man of unblemished character and good standing in society ? Reason revolts at the idea. I take it that the general character of the witness, so far as it goes to show turpitude of mind, is in issue, less credit being due to a corrupt mind than a pure one." (2 Cow. Treat. 451.)

The decisions and authorities to which I have referred, and the reasons on which they are founded, to my mind, are conclusive that the inquiry as to the character of the witness sought to be impeached ought not to be confined to his character for truth and veracity. Such a limitation necessarily excludes all discrimination between men of bad characters,

except as the same may be generally known and understood as to their truth and veracity, and men of unsullied lives and corresponding reputations.  If the general character of a witness which is proverbially and notoriously bad as a sharper or a swindler, or whose life is steeped in vice and immorality, may not be established to be as it is generally reported among his neighbors and acquaintances—though his character and reputation as to truth and veracity in terms may not have been the general subject of discussion—then such witness stands upon an equality with him whose character is without stain and whose life, at every stage of it, has been distinguished by the performance of every duty.  For jurors, sworn to try the cause before them according to the evidence, though they may know without the aid of testimony produced upon the trial of the wide difference between the characters of the two witnesses, are precluded notwithstanding their knowledge derived before the trial from observing such difference, for the reason that they are sworn a true verdict to give according to the evidence.  Thus it is seen that the witness of bad character may secure by his testimony a verdict which would have never had existence, if the truth as to his general character could have been made manifest.

I am unable to perceive wherein any material inconvenience would be likely to result from the adoption of the broad rule opening the door to inquiry respecting the general character of witnesses upon whose testimony the rights of litigants are made to depend.  Good men need not fear the ordeal of an examination of their character, while the vicious and dishonest, to a degree securing for themselves notoriously bad reputations, should be weighed in the balance by which their actual comparative worth and worthlessness may be determined.

The defendant proposed at this trial to impeach the prosecutrix on the ground that her character was notoriously bad in one particular, and the testimony was rejected.  The offer was not within either of the rules of inquiry which I have considered, but was in violation particularly of the one which

I have endeavored to show should be adopted; and therefore I think the judgment should be affirmed.