MOORE, J.
*46 Defendant Bac Tieng Nguyen appeals following his conviction for aggravated assault on a police officer (Pen. Code, § 245, subd. (c) ) based on a situation in which he wielded a large knife and took a step toward police officers after the officers ordered *284 him to put the knife down.[1] He argues that the "present ability" element of the crime was missing, as a matter of law, given the 10- to 15-foot distance between him and the officers at the time of the incident. He also requests that we independently review the documents reviewed in camera by the trial court in conjunction with a Pitchess[2] motion he filed, which sought to obtain information from confidential police officer personnel records. Our independent review reveals no error, and, thus, we affirm the judgment.
I
FACTS
On January 5, 2014, defendant's father called 9-1-1 to report that there was a man at his house who was making threats while carrying a large knife or samurai sword. Garden Grove Police Officers John Raney and Joshua Olivo responded to the scene, and learned upon their arrival that the sword-wielding man was defendant. Defendant's father, who was standing in the front yard when the officers arrived, appeared stressed and nervous. He told the officers that defendant was inside the house and was "loco."
Officers Raney and Olivo approached the wide-open front door of the residence and stopped a couple of feet away from the threshold. Defendant came around a corner inside the house and stood approximately 10 to 15 feet away from the officers, in the area located straight inside the front door. Because defendant was facing in such a way that the officers could only see his right side, Officer Olivo told defendant to show both his hands "or [he was] going to shoot [defendant]." Defendant lifted his left hand to reveal a knife that he was carrying which was about 12 to 15 inches in length. He raised the knife to his throat and said to the officers, "shoot me." Upon seeing the knife, Officer Olivo removed his gun from its holster.
Officers Raney and Olivo unsuccessfully attempted to get defendant to drop the knife and walk towards them. Instead, defendant moved the knife away from his neck, pointed it in the direction of the officers and took a step *47 toward them. Fearing for Officer Raney's and his own safety, Officer Olivo unholstered his gun and fired three rounds toward defendant, hitting him and causing him to fall to the floor. The officers approached defendant, handcuffed him and rendered first aid to him while awaiting the paramedics.
Defendant was charged with one felony count of aggravated assault on a peace officer (§ 245, subd. (c) ), and one misdemeanor count of brandishing a deadly weapon (§ 417, subd. (a)(1)). The information was later amended to eliminate the second count and replace it with one felony count of resisting an executive officer (§ 69).
Prior to trial, defendant filed two Pitchess motions, seeking discovery of certain records from Officer Raney's and Officer Olivo's personnel files. The motions sought information relating to the officers' credibility and honesty, past acts involving moral turpitude or use of excessive force, and any discipline imposed on the officers in relation to the incident involving defendant. The trial court found it appropriate to do an in camera review of the documents potentially responsive to each motion in order to determine if any were *285 discoverable, in full or in part. Based on its in camera reviews, the court concluded there was nothing to disclose.
A jury convicted defendant of the two counts charged, and the trial court sentenced him to three years in prison. Defendant timely appealed.
II
DISCUSSION
Defendant raises two issues on appeal, one concerning his pretrial Pitchess motions and the other concerning the jury's verdict. With respect to the former, he asks that we independently review the documents the trial court reviewed in camera in conjunction with his Pitchess motions to determine whether the court erred in finding that there were no discoverable documents or portions of documents. As for the latter, he argues that, as a matter of law, he could not be found guilty of aggravated assault on a peace officer because he "did not have the 'present ability' to strike the officer[s] with [the] knife" due to how far away from them he was standing. We find no merit to either of defendant's contentions.
Our review of the trial court's Pitchess motion determination is for an abuse of discretion. (People v. Mooc (2001) 26 Cal.4th 1216, 1228, 114 Cal.Rptr.2d 482, 36 P.3d 21 (Mooc ).) In Mooc , the Supreme Court held that in order to preserve the defendant's ability to obtain appellate review of the denial of a Pitchess motion, the trial court should make a record of the *48 documents it reviewed in camera, either by photocopying the documents, preparing a written list of the documents it reviewed and/or stating on the record the documents it reviewed. (Id . at p. 1229, 114 Cal.Rptr.2d 482, 36 P.3d 21.) Discoverable information generally includes limited information from a peace officer's confidential personnel records that is potentially relevant to the defense's case-either a proposed defense or the impeachment of an officer. (Warrick v. Superior Court (2005) 35 Cal.4th 1011, 1021-1022, 29 Cal.Rptr.3d 2, 112 P.3d 2.)
We have independently reviewed the sealed reporter's transcript of the in camera proceedings, as well as the sealed unredacted version of defendant's motions. During the in camera proceeding, the trial court reviewed the personnel files of Officers Raney and Olivo that were provided by the custodian of records, and described the documents reviewed. (Mooc, supra , 26 Cal.4th at p. 1226, 114 Cal.Rptr.2d 482, 36 P.3d 21.) We are satisfied that the court did not abuse its discretion by finding there was no information to disclose. (People v. Byers (2016) 6 Cal.App.5th 856, 869, 211 Cal.Rptr.3d 590.)
Turning to defendant's next contention, he argues that a person with a knife who is standing 10 to 15 feet away from a police officer- as in defendant's case- may never be convicted of aggravated assault because the person will never, as a matter of law, have the requisite " 'present ability' to commit a battery." As framed, this is a question of law that we review de novo. (People v. Villalobos (2006) 145 Cal.App.4th 310, 316, fn. 3, 51 Cal.Rptr.3d 678.)
To establish a violation of section 245, subdivision (c), among the elements that must be proven are those of assault.[3]
*286 This includes demonstrating that the defendant had the "present ability ... to commit a violent injury." (§ 240; People v. Chance (2008) 44 Cal.4th 1164, 1167, 81 Cal.Rptr.3d 723, 189 P.3d 971 (Chance ).) To have a "present ability," there must be threat of " 'a present, and not a future injury.' " (Id . at p. 1171, 81 Cal.Rptr.3d 723, 189 P.3d 971.) However, immediacy is not required. (Id . at pp. 1168, 1173, fn.11, 81 Cal.Rptr.3d 723, 189 P.3d 971.) "[W]hen a defendant equips and positions himself to carry out a battery, he has the 'present ability' required ... if he is capable of inflicting injury on the given occasion, even if some steps remain to be taken , and even if the victim or the surrounding circumstances thwart the infliction of injury." (Id. at p. 1172, 81 Cal.Rptr.3d 723, 189 P.3d 971, italics added; see, e.g., People v. Ranson (1974) 40 Cal.App.3d 317, 114 Cal.Rptr. 874 [conviction of assault affirmed based on aiming of rifle at *49 police car even though defendant would have needed to clear a magazine jam and chamber a round before being able to fire].)
Defendant acknowledges the "many cases" which have concluded that being " 'several steps away' from actually inflicting injury" does not preclude a finding of present ability, but he attempts to limit the application of that conclusion to scenarios involving a loaded gun. There is no such limitation. The interpretation of law issue involved in Chance concerned the meaning of the phrase "present ability" as applied to assaults, generally, not as to any particular weapon. (Chance , supra , 44 Cal.4th at pp. 1167, 1169, 81 Cal.Rptr.3d 723, 189 P.3d 971.) And, although the factual situation presented in Chance involved a loaded gun, the Supreme Court cited with approval cases discussing other weapons, such as swords and hatchets. (Id . at pp. 1172, 1174, 81 Cal.Rptr.3d 723, 189 P.3d 971, citing People v. McMakin (1857) 8 Cal. 547, 548 [swords and bayonets]; People v. Yslas (1865) 27 Cal. 630, 631, 633-634 (Yslas ) [hatchet].)
Yslas is a prime example. "In Yslas , the defendant approached within seven or eight feet of the victim with a raised hatchet, but the victim escaped injury by running to the next room and locking the door. Yslas committed assault, even though he never closed the distance between himself and the victim, or swung the hatchet." (Chance , supra , 44 Cal.4th at p. 1174, 81 Cal.Rptr.3d 723, 189 P.3d 971, citing Yslas , supra , 27 Cal. at pp. 631, 633-634.) We decline to distinguish, as a matter of law, a situation involving seven or eight feet of separation between the perpetrator and the victim, from that involving 10 or 15 feet, as in the present case. Such is a factual matter within the province of the trier of fact. (People v. Williams (2001) 26 Cal.4th 779, 790, 111 Cal.Rptr.2d 114, 29 P.3d 197 [trier of fact in assault case is charged with determining whether defendant's "act by its nature will probably and directly result in the application of physical force against another"].)
III
DISPOSITION
The judgment is affirmed.
WE CONCUR:
BEDSWORTH, ACTING P.J.
FYBEL, J.

All further statutory references are to the Penal Code.

Pitchess v. Superior Court (1974) 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305 (Pitchess ).

Section 245, subdivision (c), provides: "Any person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years."