Filed 12/2/20  P. v. Martin CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DOUGLAS MARTIN,<br><br>    Defendant and Appellant. | G058360<br><br>(Super. Ct. No. 17NF2781)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Kristen Ramirez, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Douglas Martin was convicted of aggravated assault on a police officer, recklessly evading the police and unlawfully taking or driving a vehicle. (Pen. Code, § 245, subd. (c); Veh. Code, §§ 2008.2, 10851, subd. (a).)[1] He contends the trial court violated section 654 by imposing sentence for the assault because that offense was part and parcel of his reckless evading. He also seeks independent review of the records the trial court examined in connection with his *Pitchess* motion. (See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).) Finding no basis to review those records, or otherwise disturb the judgment, we affirm.

FACTS

On the afternoon of October 5, 2017, Brea Police Officer David Wearp was driving an unmarked police vehicle north on the I-5 Freeway when he saw a white van weaving in and out of traffic. Appellant was driving the van, and there was a woman in the front passenger seat. After running the van's license plate number and learning the vehicle was stolen, Wearp radioed for backup, and several marked police cars arrived in the area and began following the van along with Wearp.

Appellant exited the freeway at Katella Avenue and stopped for a red light. When the light turned green, the officers activated their lights and sirens in order to get appellant to pull over. Instead, he drove back onto the freeway, and the officers followed him in hot pursuit. Appellant then exited the freeway again at Ball Road. Largely oblivious to traffic lights, crosswalks and speed limits, he crossed over the overpass and reentered the freeway heading south.

Santa Ana Police Officer Jonathan Ridge trailed appellant in an adjacent lane on the freeway, and Officer Wearp followed closely behind Ridge. Suddenly, appellant hit the brakes, and when Ridge's squad car came up alongside him, he rammed his van into it. The force of the collision drove both vehicles across several lanes of

---

[1] Unless noted otherwise, all further statutory references are to the Penal Code.

traffic, onto the shoulder of the freeway. It also caused Wearp to lose control of his vehicle and crash into the guardrail. When the dust settled, appellant's van was roughly perpendicular to the front of Ridge's squad car, and Wearp's vehicle was slightly behind them.

Ridge exited his vehicle and took up a position in the fold of his door with his gun drawn. He told appellant to surrender, but appellant did not comply. Instead, he backed up his van about 15 feet, shifted into forward gear, and began driving directly toward Ridge at a rapid rate of speed. At that point, Wearp fired several unsuccessful shots at appellant. Anaheim Police Sergeant Darrin Lee had arrived at the scene by that time, and, seeing appellant's van headed toward Ridge's squad car, he plowed his car into it, narrowly preventing Ridge from being hit.

His van disabled, appellant was taken into custody and charged with car theft, recklessly evading the police and assaulting Ridge. He also faced a great bodily injury enhancement on the assault charge, because, as a result of the freeway collision, Ridge suffered debilitating neck, back and shoulder pain and needed surgery to repair severe damage to his left wrist.

At trial, the only disputed charge was the alleged assault on Ridge. The prosecution argued that, from a factual standpoint, there were two possible bases for that offense: 1) appellant's act of ramming his van into Ridge's squad car on the freeway, and 2) appellant's act of driving toward Ridge on the shoulder before Lee plowed into him. The defense presented testimony from an accident reconstructionist to refute the first theory. He testified the freeway collision was caused by Ridge driving into appellant, not the other way around. As for the second theory, defense counsel did not have much to work with. In closing argument, she simply asserted that appellant "didn't act to run over Ridge."

In the end, the jury convicted appellant on all three counts, but it found the great bodily injury allegation not true. The trial court sentenced appellant to six years

3

and four months in prison, comprising five years for the assault and eight months on each of the remaining counts.

DISCUSSSION

*Sentencing Issue*

Relying on the multiple punishment prohibition in section 654, appellant contends the trial court should have stayed sentence on the assault count because it was inseparable from the reckless evading count.  His argument is premised on the notion that he had but one objective – to get away from the police – in committing those two offenses.  However, given how the crimes occurred, the trial court could reasonably conclude appellant assaulted Officer Ridge with the goal of injuring him, not just getting away from him, and that appellant had ample opportunity to reflect on his actions during the course of his offenses.  We therefore uphold the trial court's sentencing decision.

Under section 654, a defendant cannot receive multiple punishment for a single act or an indivisible course of conduct that results in multiple offenses.  (§ 654, subd. (a); *People v. Deloza* (1998) 18 Cal.4th 585, 591.)  Whether a course of conduct is indivisible depends on the intent and objective of the defendant.  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)  Generally, if the defendant's crimes reflect multiple criminal objectives, they will be considered divisible, and multiple punishment is permitted. (*People v. Beamon* (1973) 8 Cal.3d 625, 639; *People v. Blake* (1998) 68 Cal.App.4th 509, 512.)  But if the defendant's crimes were "merely incidental to, or were the means of accomplishing or facilitating one objective," they will be considered indivisible, and he may be punished only once.  (*People v. Harrison, supra,* 48 Cal.3d at p. 335.)

As explained in *People v. Jimenez* (2019) 32 Cal.App.5th 409 (*Jimenez*), section 654 has been further refined in another respect:  "[E]ven if a course of conduct is 'directed to one objective,' it may 'give rise to multiple violations and punishment' if it is 'divisible in time.'  [Citation.]  '[A] course of conduct divisible in time, though directed to one objective, may give rise to multiple convictions and multiple punishment "where

4

the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken."' [Citation.] Section 654's purpose is to ensure '""that a defendant's punishment will be commensurate with his culpability."" [Citation.]

"Whether a defendant had multiple intents or objectives in committing multiple crimes is generally a question of fact for the sentencing court. [Citation.] 'When[, as here,] a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective.' [Citation.] Such findings will be upheld on appeal if supported by substantial evidence. [Citation.]" (*Jimenez, supra,* 32 Cal.App.5th at pp. 424-425.)

The *Jimenez* court upheld the imposition of separate sentences on facts that were similar to those before us now. In that case, Jimenez was being chased from behind by one police car when a second, up ahead of them, began driving toward Jimenez from the opposite direction. Rather than trying to avoid the second officer, Jimenez drove directly into his lane and forced him to swerve out of the way to avoid a head-on collision. He was convicted of both recklessly evading the first officer and assaulting the second officer.

Like appellant, Jimenez argued section 654 precluded separate punishment for his assault because he committed it solely to effectuate his escape from the police. However, *Jimenez* rejected this argument for two reasons. First, "Apart from evading the first vehicle, Jimenez drove on the wrong side of the road heading directly toward the second vehicle, resulting in the commission of the assault. The evidence was sufficient to support the court's implied finding that Jimenez had two objectives — he was both intending to evade and trying to assault the deputies in the second vehicle. [Citation.]" (*Jimenez, supra,* 32 Cal.App.5th at p. 425.)

5

Secondly, "The trial court also could reasonably have found that Jimenez had time to reflect before committing the assault. Jimenez could have driven on his side of the road or moved rather than driving head on toward [the second] vehicle. He chose not to do so, aggravating the severity of the situation. Jimenez's initial efforts trying to evade the first vehicle, and his subsequent assaultive conduct, 'were volitional and calculated, and were separated by periods of time during which reflection was possible.' [Citation.]" (*Jimenez, supra,* 32 Cal.App.5th at p. 426.)

Both rationales apply equally in this case. During the course of the high-speed pursuit of appellant, his van somehow collided with Ridge's squad car, and their vehicles ended up together on the shoulder of the freeway. Since Ridge suffered severe injuries as a result of the collision, and the jury found the great bodily injury allegation not true, the jury likely looked to appellant's conduct after the collision in finding him guilty of assaulting Ridge.

As we have explained, once appellant's and Ridge's vehicles came to rest on the shoulder of the freeway, Ridge ordered appellant to surrender. However, appellant backed up his van, shifted into forward gear, and came barreling toward Ridge, which clearly constituted an assault. Appellant contends he was simply maneuvering his vehicle in a manner that would allow him to escape from the scene and avoid apprehension but his van was only a few feet away from Ridge when Lee rammed into it, a measure that Lee felt was necessary to prevent Ridge from getting hit. The fact Officer Wearp fired his gun at appellant several times also shows Ridge was in grave danger by virtue of appellant's actions. On these facts, the trial court could reasonably conclude appellant intended to harm Ridge, and was not just trying to flee the scene, when he drove his van toward him on the shoulder of the freeway.

In addition, the record shows appellant had ample opportunity to reflect on his actions at that time. By then, the chase had come to a halt due to the collision. Appellant was sitting behind the wheel of his van, and Ridge was positioned in the fold

6

of his front door.  Ridge ordered appellant to surrender, but instead of giving up the fight, appellant started driving again.  Even if we assume appellant was simply trying to maneuver his way back onto the freeway to get away from the police, this decision was divisible in time from the earlier part of the chase.  Because he made a conscious decision to continue his criminal behavior, thus aggravating the situation even further, his punishment was commensurate with his culpability.  The trial court did not violate section 654 by imposing sentence on both the reckless evading count and the assault count.[2]

### Pitchess Claim

Appellant also asks that we review the materials the trial court examined in connection with his discovery motion under *Pitchess*.  We decline the invitation.

In *Pitchess*, our Supreme Court held a criminal defendant has a right to discovery of the personnel records of peace officers to ensure "a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." (*Pitchess, supra*, 11 Cal.3d at p. 535.)  However, the right is not unlimited; only those records material to the pending litigation are subject to release.  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019; §§ 832.7, 832.8; Evid. Code, §§ 1043-1045.)

In this case, appellant made a *Pitchess* motion with respect to several of the police officers who were involved in the high-speed chase that led to his arrest. Appellant was seeking information about any acts of dishonesty or excessive use of force the officers may have engaged in while performing their official duties.  In response, the trial judge conducted several in-camera hearings to review the officers' personnel records, which included their internal affair files.  Ultimately, the court ordered the disclosure of only a limited amount of the information in the records.

---

[2] Appellant additionally contends the trial court violated his due process rights by failing to comply with section 654.  Having found no section 654 violation, we necessarily reject this contention.  For the same reason, we need not address respondent's backup theory that appellant's sentence was justified under the multiple victim exception to section 654.  (See generally *People v. Newman* (2015) 238 Cal.App.4th 103, 117.)

Appellant requests that we independently review the officers' personnel files to ensure no relevant materials were omitted from the trial court's disclosure order. Respondent does not oppose the request, and we agree independent review would be the most effective way to assess the propriety of the court's order. (See *People v. Nguyen* (2017) 12 Cal.App.5th 44, 49-51 (unanimous conc. opn. of Bedsworth, Acting P.J.).) However, our Supreme Court has determined that, in the context of a *Pitchess* motion, meaningful appellate review can be accomplished by examining the sealed transcript of the trial court's in-camera review proceedings. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209; *People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) Therefore, we have no basis for examining the officers' files ourselves. (*Ibid*.)

Having reviewed the sealed transcript of the hearings on appellant's discovery motion, we find nothing to suggest the trial court failed to fulfill its duties under *Pitchess* by making a record of the documents it examined and explaining the basis for its decision. (See *People v. Mooc, supra*, 26 Cal.4th at p. 1229 [in ruling on *Pitchess* motion, the trial court should make a record of the documents it examined by describing them on the record].) We therefore have no reason to disturb the court's disclosure order.

DISPOSITION

The judgment is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.

8