Filed 10/26/20  P. v. Cuevas CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B292935, consolidated with B299705 |
| Plaintiff and Respondent, | |
| v. | Los Angeles County Super. Ct. No. PA090576 |
| ADRIAN CUEVAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Affirmed as modified.

N. Noelle Francis, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Adrian Cuevas of felony assault with a deadly weapon and misdemeanor vandalism. He appeals and we affirm the judgment as modified.

## BACKGROUND

An information charged Cuevas with felony assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)); misdemeanor vandalism (§ 594, subd. (a)); and making a criminal threat (§ 422, subd. (a)). The information alleged Cuevas had served three prior prison terms. (§ 667.5, subd. (b).)

On October 21, 2017, Cuevas, then 35 years old, lived in a second-story apartment with his 68-year-old mother, Emilia Alvarez. Alvarez testified Cuevas was drinking beer, and got upset because she had forgotten his birthday. Cuevas went into her bedroom and threatened to throw out all her things. He threw objects around, hit the wall, punched a hole in the window screen, and tossed a radio, a jar of face cream, and small decorative plates out of the window and into the alley below. Cuevas told her: " 'I'm going to finish everything off here and then you'll be left for me to do.' " Alvarez was afraid he would hit her.

Standing in the bedroom doorway, Alvarez saw Cuevas start to lift a large portable air conditioning unit that was on the floor. Frightened, she ran outside and called 911. She told the operator her son was breaking everything and throwing things at her, he was under the influence of drugs, and she was afraid, although she had managed to get out before he hit her with anything. She called 911 a second time to ask when the police would arrive.

---

[1] All subsequent statutory references are to the Penal Code unless otherwise indicated.

The prosecutor asked Alvarez if she remembered telling Los Angeles Police Department Officer Oscar Amaro that Cuevas picked up the air conditioning unit and threw it at her from six or seven feet away, making her move out of the way to avoid getting hit. Alvarez replied that Cuevas "couldn't lift that air conditioning unit because [Cuevas] is sick from his back."

On cross-examination, Alvarez said Cuevas was drunk. She called the police because she was angry and wanted him out of the house. Cuevas was breaking glasses and throwing things out the window. He tried to lift the air conditioner and let it go. He did not lift it to his shoulders or try to throw it at her. The unit was about three feet high and eighteen inches wide, and she had wheeled it into her bedroom from the living room. She had not been afraid he would throw it at her, or that he would hurt her. When Cuevas drank, she was afraid he might hurt himself or her, or hurt her dog (as he had done before).

Officer Ian Cochran testified that when he and his partner responded to the apartment, they found Alvarez in the alley behind the apartment building, visibly shaken and angry. In broken English, she said her son had vandalized some of her property. The police told Alvarez to stay in the alley and went upstairs to the apartment. No one answered their knock and they opened the unlocked door. Cuevas was pacing back and forth in the hall and refused to go outside to talk. He appeared to be under the influence of alcohol or drugs. He yelled at the officers for 35 minutes, taking a shooting stance and pointing his cell phone at them.

After the officers called for backup, Cuevas complied and was arrested. Officer Cochran, his partner, and Officer Amaro walked through the apartment with Alvarez. Her bedroom had

3

been ransacked with things strewn around the room. The window screen was broken and the alley below was littered with broken plates.

A portable air conditioning unit lay on the bedroom floor with panels broken off, several feet from the doorway. Officer Cochran, who was six feet tall and weighed 190 pounds, lifted the unit to his shoulder to test its weight. Cuevas was about five feet eight inches tall, and weighed about 190 pounds.

Officer Amaro testified he responded to the back up call and interviewed Alvarez in Spanish. She was frightened but cooperative and provided details. Alvarez said when she confronted Cuevas in her bedroom, he picked up the portable air conditioning unit, lifted it to shoulder height, and threw it at her from six or seven feet away. This was inconsistent with her testimony at trial.

Two days later, Officer Jay Balgemino called Alvarez and spoke to her in English. She confirmed that Cuevas threw an air conditioning unit at her.

On November 4, 2017, Cuevas called Alvarez from jail. Cuevas said investigators were going to interview her, and he had heard she was going to say he threw the air conditioning unit at her. Cuevas said he told the investigators he picked the unit up, it felt very heavy because he was drunk, it strained his back, and " 'well, I threw it to the—it fell to the floor.' " Cuevas warned Alvarez she would have to be up in front answering questions for several days. When Alvarez replied she could not miss work because "[t]he lady needs me," Cuevas told her not to go to court and not to answer if they called. If she did talk to investigators, "[J]ust say . . . that, well, that I didn't throw it at you and that it

4

fell on the floor and that . . . just don't go to court because that's where they want to screw me over."

Four months later, Alvarez testified at the preliminary hearing Cuevas "tried to pick . . . up [the air conditioning unit], but it was too heavy for him, and I ran out of the room thinking he was going to try to hit me with it."

In a July 2016 incident, Cuevas pushed Alvarez and made her fall. She screamed and someone called the police. When the police arrived, they heard her screaming inside the apartment and kicked in the door. Cuevas was pulling Alvarez by the arms toward the rear bedroom. She broke away, ran toward the officers, and waited by the outside stairs. Crying, scared, and cooperative, Alvarez told the officers Cuevas took her phone away to stop her from calling 911. He grabbed her arms, pushed her into the living room, threw her to the floor, pulled her away from the front door, and locked it. Her stomach and knees were injured.

In closing, the prosecutor argued that Cuevas abused Alvarez. Cuevas called her from jail and told her to lie for him. At trial, she struggled between protecting him and protecting herself, contradicting the statements she made to the officers and at the preliminary hearing. Defense counsel argued Alvarez's contradictory stories created a reasonable doubt whether Cuevas threw the air conditioner at her.

The jury convicted Cuevas of assault with a deadly weapon and vandalism, and acquitted him of making criminal threats. After finding true one of the prior prison term allegations, the trial court sentenced Cuevas to state prison for five years (the upper term of four years for assault, and one year for the prior prison term enhancement). For the misdemeanor vandalism,

the court imposed 364 days in county jail to run concurrent to the prison term. Cuevas received 684 days of presentence custody credit.

## DISCUSSION

1. ***Sufficient evidence supports the conviction for assault with a deadly weapon***

Cuevas does not argue the air conditioning unit was not a deadly weapon. He contends there was insufficient evidence he had the present ability to throw the air conditioning unit at Alvarez.

"Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years . . . ." (§ 245, subd. (a)(1).) "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) " 'Once a defendant has attained the means and location to strike immediately he has the "present ability to injure." ' " (*People v. Chance* (2008) 44 Cal.4th 1164, 1174.) Immediately does not mean instantaneously: "[W]hen a defendant equips and positions himself to carry out a battery, he has the 'present ability' required . . . if he is capable of inflicting injury on the given occasion, even if some steps remain to be taken, and even if the victim or the surrounding circumstances thwart the infliction of injury." (*Id.* at p. 1172; *People v. Nguyen* (2017) 12 Cal.App.5th 44, 48.) "Thus, an assault can occur even when the defendant makes no contact with the victim." (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 85.) Whether a defendant is within striking distance is a question for the trier of fact. (*Id.* at p. 87.)

6

Cuevas argues the evidence was insufficient to support a finding he had the present ability to pick up the air conditioning unit and throw it far enough to seriously injure Alvarez, because the unit was heavy and no evidence suggested he was capable of this "extraordinary feat."  But the unit lay broken several feet from the doorway where Alvarez stood.  She told Officer Amaro Cuevas threw the unit at her from six or seven feet away.  Two days later she confirmed to Officer Balgemino that Cuevas threw the unit at her.  Then Cuevas called Alvarez from jail and told her not to talk to investigators or go to court, and to say he did not throw the unit.  At trial Alvarez testified Cuevas did not lift the unit or try to throw it at her.  The jury could reasonably disbelieve this testimony, given under pressure from her son and contradicted by her statements to the officers.  Officer Cochran, who weighed the same as Alvarez, picked up the air conditioning unit and held it at shoulder height.  There was no evidence how much the unit weighed, or that it was physically impossible for Cuevas to lift it and throw it at Alvarez.

Substantial evidence in the record supports the conclusion that Cuevas had the present ability to seriously injure Alvarez. He attained the means when he picked up the air conditioning unit, and at six or seven feet away he was close enough to strike by throwing the unit at Alvarez.

**2.**    ***The one-year prior prison term enhancement must be stricken***

Cuevas received a one-year sentence enhancement under section 667.5, subdivision (b) for having served a prior prison term for a felony conviction.  Effective January 1, 2020, Senate Bill No. 136 amended section 667.5, subdivision (b) to apply only if the prior prison term was served for a sexually violent offense.

7

(Sen. Bill No. 136 (2019-2020 Reg. Sess.) § 1.) Senate Bill No. 136 applies to Cuevas, whose conviction was not final on January 1, 2020. (*People v. Winn* (2020) 44 Cal.App.5th 859, 872-873.) Cuevas is entitled to the retroactive benefit of the change in the law. And as the trial court imposed the maximum possible sentence, we need not remand for resentencing, but may simply strike the one-year enhancement. (*Id.* at pp. 873-874.)

3.     ***No hearing is required on Cuevas's ability to pay fines and fees***

At sentencing, with no objection from Cuevas, the trial court stated: "[T]he defendant must pay the mandatory fees and fines. There's a restitution fine of $300 [§ 1202.4, subd. (b)]; a parole revocation restitution fine [§ 1202.45] in the same amount, but that's stayed until parole is revoked and he is returned to prison. [¶] A criminal conviction/facilities assessment of $30 [on each count, Gov. Code, § 70373], a court security fee of $40 [on each count, § 1465.8, subd. (a)(1)], and a crime prevention fine of $10 [§ 1202.5]." The minute order, however, contains an additional court cost of $29 and a $2 criminal fine surcharge [§ 1465.7], which also appear in the abstract of judgment. The oral pronouncement of sentence controls over the minute order or abstract of judgment. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) Respondent concedes we therefore must strike the $29 court fee. Without that fee, the fines and fees for the two counts of conviction total $450 (excluding the suspended parole revocation restitution fine).

On May 16, 2019, while this appeal was pending, Cuevas moved the trial court pursuant to section 1237.2 and *People v. Dueñas* (2019) 30 Cal.App.5th 1157, to stay the execution of the restitution fine and vacate or suspend the fees imposed at

8

sentencing. At the hearing, Cuevas argued he was unemployed when he was arrested and had no ability to pay fines and fees. The trial court pointed out Section 1237.2 provides the trial court retains jurisdiction after a notice of appeal is filed to correct any error in fines or fees "where the erroneous imposition or calculation of fines, penalty assessments, surcharges, fees, or costs are the sole issue on appeal." (§ 1237.2.) As Cuevas had filed an appeal raising other issues, the court concluded it did not have jurisdiction. In the alternative, the court found Cuevas had the ability to pay the fines and fees because he could earn prison wages during his time in state prison, citing *People v. Johnson* (2019) 35 Cal.App.5th 134, 139-140. The court denied the motion and Cuevas appealed. We consolidated the two appeals.

As a general rule, "an appeal from an order [or judgment] in a criminal case removes the subject matter of that order [or judgment] from the jurisdiction of the trial court." (*Anderson v. Superior Court of Solano County* (1967) 66 Cal.2d 863, 865; see also § 1235, subd. (b) ["An appeal from the judgment or appealable order in a felony case is to the court of appeal for the district in which the court from which the appeal is taken is located."].) Section 1237.2 is an exception to this general rule. (See § 1237 [providing in part that "[a]n appeal may be taken by the defendant from . . . the following: [¶] (a) Except as provided in Sections 1237.1, 1237.2, and 1237.5, from a final judgment of conviction"].) However, if issues *other than* the imposition or calculation of such fines, assessments, and fees are being appealed, the limited exception provided by section 1237.2 to section 1235 no longer applies. (See *People v. Jordan* (2018) 21 Cal.App.5th 1136, 1142 [recognizing that § 1237.2 "mandate[s] that a defendant timely raise his [or her]

9

penalty assessment claims to conserve judicial resources and efficiently present claims in a single forum"].)

Here, the limited exception provided by section 1237.2 did not apply because Cuevas's first appeal is not limited to an error in the imposition or calculation of fines, assessments, and fees. As such, the trial court was correct—it lacked jurisdiction to rule on his motion to vacate the fines and fees. Because the trial court did not err, we affirm the order challenged in the second appeal and decline to reach Cuevas's constitutional challenges to the fines and fees imposed at sentencing.

## DISPOSITION

The judgment is modified to strike the one-year sentence enhancement under section 667.5, subdivision (b), and to strike the court cost of $29.  In all other respects, the judgment is affirmed.

The trial court shall issue an amended abstract of judgment as set forth above, and shall send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.

11