Filed 6/27/25  P. v. Perry CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA LEE PERRY,<br><br>        Defendant and Appellant. | A169113<br><br>(Contra Costa County<br>Super. Ct. No. 05001314970) |

After defendant Joshua Lee Perry pleaded no contest to one count of voluntary manslaughter and admitted suffering a prior strike conviction, the trial court sentenced him to 22 years in prison.  Seven years later, defendant petitioned for resentencing pursuant to Penal Code section 1172.6.[1]  Before the evidentiary hearing on the petition, defendant moved for discovery of personnel records of two Antioch police officers involved in the investigation of his underlying case pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).  Following two in camera hearings, the trial court ordered a limited disclosure of information contained in one of the officer's personnel records and ultimately denied his petition for resentencing.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

1

On appeal, defendant requests that we conduct an independent review of the sealed transcript of the in camera hearings on his *Pitchess* motion to ensure that all discoverable material was turned over to him. The Attorney General does not object to an independent review.

On our record, we cannot conclude whether the court's in camera *Pitchess* hearing conformed with prescribed procedures as to one of the officer's records and thus conditionally reverse the order denying the defendant's petition for resentencing.

## BACKGROUND[2]

In November 2012, Risa Peoples found her live-in boyfriend Vaughn Walker shot on their front porch. "[P]anicked" and "scared," Peoples managed to drive a still-conscious Walker to the hospital. During the drive, Walker stated "Felicia and Joshua shot him." While awaiting information at the hospital, Peoples was contacted by Antioch police officers and informed that Walker had died. An autopsy later revealed a .22-caliber projectile in Walker's right rib area.

Peoples was interviewed several times. Initially, Antioch Police Detective Jiseok Jeong spoke with her at the hospital. Peoples informed Detective Jeong that Walker said, " "I'm shot. I'm shot. They shot me. They shot me.' " Detective Jeong did not ask Peoples if Walker told her who shot him, and Peoples did not tell him. She recalled that, earlier in the day, two people introducing themselves as Joshua, later identified as defendant, and Felicia Viscaina had arrived at her home asking to see Walker. Walker declined to speak with them.

---

[2] The following factual background is taken from the section 1172.6 hearing. We relate only those facts relevant to the issue on appeal.

Later that same evening, defendant returned to the house, and Walker went outside to meet him. While Walker was outside, Peoples's son, Durell Anderson,[3] and her cousin, Christopher Darby, arrived and came inside the house, remarking to Peoples that they did not recognize the individuals with Walker. When Anderson and Darby left shortly thereafter, Peoples walked them outside. Peoples saw Walker, defendant and another man, later identified as Forest Murray, standing on the porch, and Viscaina standing in the driveway.

During a second interview, at the Antioch Police Department, Peoples recounted that, while driving Walker to the hospital, he told her he was dying and that "Felicia and Joshua shot him." She also identified defendant from a photographic lineup as the person who had introduced himself to her earlier that day as Joshua. Christopher Darby later identified Viscaina in a photographic lineup as possibly the woman in the driveway the day Walker was shot.

The police recovered a cell phone from People's driveway and a .22-caliber casing with a "Super X" headstamp from the front porch.

The day after the shooting, Viscaina and defendant were with a second woman, Maria Quijano. Quijano reached out to their mutual friend Gary Smith. Smith agreed to take the three passengers (Quijano, defendant, and Viscaina) from one motel near Antioch to another one in Pittsburg in exchange for methamphetamine. The police, who had been monitoring the motel, executed a traffic stop of Smith's car shortly after the group left. One of the officers recognized defendant, who provided a fake name. The police recovered a backpack from the "rear passenger area" of the car—where defendant and Viscaina were sitting. Inside the backpack, police officers

---

[3] Anderson had passed away by the time of section 1172.6 hearing.

3

located 18 rounds of .22-caliber ammunition and documents containing Viscaina's name.

In July 2013,[4] the Contra Costa County District Attorney filed an information alleging one count of murder (§ 187; count 1). The information further alleged defendant suffered a prior prison conviction (§ 667.5, subd. (b)), a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) as well as an on-bail enhancement. The district attorney later amended the information to add a count of voluntary manslaughter (§ 192, subd. (a); count 2).

Defendant pleaded no contest to the voluntary manslaughter count and admitted a prior strike conviction. The trial court granted the district attorney's motion to dismiss the remaining count of murder. Pursuant to the plea agreement, the trial court sentenced defendant to 22 years in prison. Defendant appealed, and this court affirmed the judgment. (*People v. Perry*, *supra*, A144901.)

In January 2022, defendant filed a petition for resentencing pursuant to section 1172.6 (former § 1170.95). The trial court appointed counsel to represent defendant, and the parties submitted briefing. After a hearing, the trial court determined defendant had made a prima facie case and issued an order to show cause (OSC).

Before the scheduled OSC hearing, the prosecution notified defendant, pursuant to *Brady*,[5] that "running *Pitchess* motions on former Antioch Police

---

[4] We grant the parties' request for judicial notice of the record in the prior appeal, *People v. Perry* (July 25, 2016, A144901) [nonpub. opn.]. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[5] *Brady v. Maryland* (1963) 373 U.S. 83.

Department Officers Castillo (2961) and Meads (3917) may produce discoverable information."

Accordingly, defense counsel moved for discovery of records involving former Detective Castillo and Officer Meads of the Antioch Police Department (Department). Counsel included a statement of facts describing Officers Castillo's and Meads's involvement in the case.[6] Specifically, Officer Meads interviewed Anderson, Peoples's son, and Gary Smith, who was driving defendant and Viscaina when they were arrested. Officer Meads also prepared the photo lineups presented to Anderson. Detective Castillo "supervised other officers conducting" the investigation, including supervising the interview of Quijano, who acknowledged arranging the ride between defendant and Smith. He participated in the subsequent search of Smith's impounded vehicle and conducted the custodial interview of Forrest Murray, who was identified as the second man on the porch with defendant and took part in portions of the custodial interview of Viscaina.

Relying on case law (*Brady*, *Johnson*,[7] *Pitchess*), Evidence Code sections 1043 through 1046, and state and federal due process protections, counsel requested the court conduct an in camera review of the officers' personnel files for indications of misconduct and criminal history records for arrests or convictions involving crimes of moral turpitude. Counsel declared the good cause requirements of *Pitchess* and the materiality standards of *Brady* had been met. Specifically, "[g]ood cause exists to require the production of this material in that it is necessary to prove former Officers Castillo and Meads tendencies to fabricate evidence and/or probable

---

[6] It does not appear Officers Castillo or Meads testified at the preliminary hearing or the section 1172.6 hearing.

[7] *People v. Johnson* (2015) 61 Cal.4th 696.

5

cause, provide false testimony, or engage in other conduct unbecoming of an officer and/or evincing moral turpitude. This evidence is relevant and material to the presentation of the defense or, in the alternative, it may lead to admissible impeachment evidence." Counsel further asserted it was "essential" to obtain such records "in order to evaluate the officer's customs, habits, and credibility, to enable us to present a defense." Counsel maintained the detectives' credibility and past conduct are relevant to the extent they could have affected the reliability of key witnesses' testimony, as those recollections may have been tainted during their prior interviews with Detective Castillo and Officer Meads.

The Department submitted an opposition to the motion, asserting defendant "did not present sufficient good cause or materiality to the Court when attempting to challenge the officer's credibility when the key witnesses' credibility is at issue and relevant to his defense." The Department also asserted the discovery request was "overly broad" and "should be limited to police misconduct related to inappropriate or tainted witness interviews." (Italics omitted.) The opposition specifically stated the prosecution's *Brady* letter was not a demonstration of relevancy sufficient to support the sustaining the *Pitchess* motion.

The court determined "a sufficient showing" had been made to conduct an in camera hearing to "review the personnel records of the two named officers for any evidence of dishonesty, moral turpitude, which would include concerns raised here about any altering or tampering with witness statements or any improprieties in conducting searches. But any evidence of moral turpitude will come within that scope." Regarding Detective Castillo, the court ordered the "the names, addresses, and phone numbers of the complaining party and the witnesses" to three events be disclosed under a

6

protective order.[8]  The court required further research on the records regarding Officer Meads and set a hearing on the matter for June.  After the June in camera hearing, the court determined there were "no disclosures required as to Detective Meads pursuant to the *Pitchess* and *Brady* processes."

Following the rulings on the *Pitchess/Brady* motion, the court continued with and ultimately denied defendant's petition for resentencing.

## DISCUSSION

Defendant requests this court independently review the record, including the sealed transcripts to determine whether the trial court abused its discretion by failing to release all pertinent information—essentially, whether the trial court properly applied the *Pitchess* standards.  The Attorney General "does not object to appellant's request."

In *Pitchess*, our Supreme Court held "a criminal defendant [can] 'compel discovery' of certain relevant information in the personnel files of police officers by making 'general allegations which establish some cause for discovery' of that information and by showing how it would support a defense to the charge [or charges] against [the defendant]."  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1018–1019 (*Warrick*); *People v. Nguyen* (2017) 12 Cal.App.5th 44, 47–48.)  This holding was later codified in sections 832.5, 832.7, and 832.8 and Evidence Code sections 1043 through 1047.  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226 (*Mooc*); *Warrick*, at p. 1019.)  *Pitchess* and this resulting statutory scheme seeks to balance a criminal defendant's "due

---

[8]  The protective order provided that "any personnel records delivered to or copied by the Court" of the Department's personnel records pertaining to Detective Castillo be sealed, and the City and the Department "shall provide," within five business days, "the name, address, and telephone number of complainants or witnesses ordered to be produced by the Court."

process right to a fair trial" with an officer's "strong privacy interest." (*Mooc,* at p. 1227.)

The procedures for obtaining disclosure of otherwise confidential personnel records are outlined in the Evidence Code. To obtain discovery of an officer's personnel records, a defendant must file a motion that includes an affidavit establishing "good cause" for the discovery, "setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records." (Evid. Code, § 1043, subd. (b)(3).) When the trial court concludes defendant has "made a showing of good cause, the custodian of records should bring to court all documents 'potentially relevant' to the defendant's motion." (*Mooc, supra*, 26 Cal.4th at p. 1226.) If the custodian "does not produce the entire personnel file for the court's review," the custodian must establish under oath "what documents or category of documents" were excluded and explain the decision to exclude them. (*People v. Guevara* (2007) 148 Cal.App.4th 62, 69; *Mooc,* at p. 1229 & fn. 4.)

The court then conducts an in camera review of the documents and, subject to various "statutory exceptions and limitations," discloses to the defense any " 'information [that] is relevant to the subject matter involved in the pending litigation.' " (*Mooc, supra*, 26 Cal.4th at p. 1226, quoting Evid. Code, § 1045, subd. (a).) Our Supreme Court held, to permit meaningful appellate review of a *Pitchess* claim, the trial court must make a sufficient record of the documents it reviewed in determining whether the requested police personnel records are discoverable. (*Mooc,* at p. 1228.) "If the documents produced by the custodian are not voluminous, the court can photocopy them and place them in a confidential file. Alternatively, the court

8

can prepare a list of the documents it considered, or simply state for the record what documents it examined. Without some record of the documents examined by the trial court, a party's ability to obtain appellate review of the trial court's decision, whether to disclose or not disclose, would be nonexistent." (*Id*. at p. 1229.)

We review a trial court's ruling on a *Pitchess* motion for an abuse of discretion. (*Mooc, supra*, 26 Cal.4th at p. 1228.)

Upon review, we conclude the trial court examined Officer Meads' entire personnel file, and the court did not abuse its discretion in excluding from disclosure any of the officer's personnel records.

However, it is unclear whether the custodian of records produced Detective Castillo's complete personnel file for the court to review. The custodian did not elucidate whether he had brought the entire file, nor was he asked. Although the trial court indicated it had at least three files of materials relating to Detective Castillo, we are unable, on the record before us, to determine whether these materials comprised the entirety of the file or merely a portion.

Accordingly, we conditionally reverse the order denying defendant's petition for resentencing and remand for the trial court to conduct a new *Pitchess* hearing of Detective Castillo's personnel files, where it may either, "photocopy them and place them in a confidential file," if the records are not voluminous; "prepare a list of the documents it considered, or simply state for the record what documents it examined." (*Mooc, supra*, 26 Cal.4th at p. 1229.)

## DISPOSITION

The order denying defendant's petition for resentencing is conditionally reversed and the matter is remanded to the court with directions to hold a

9

new *Pitchess* hearing regarding Officer Castillo's records. If the court determines additional information must be disclosed to defendant, it shall order disclosure and allow defendant an opportunity to demonstrate prejudice and order a new section 1172.6 evidence hearing if there is a reasonable probability the outcome would have been different had the evidence been disclosed. If the court confirms the lack of discoverable evidence or finds defendant was not prejudiced from the denial of discovery, the order denying the petition shall be reinstated.

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Smiley, J.


A169113, People v. Perry

11