Filed 10/28/25  P. v. Gutierrez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DANIEL VALDEZ GUTIERREZ,<br><br>Defendant and Appellant. | F088154<br><br>(Super. Ct. No. BF194504A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Tiffany Organ-Bowles, Judge.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and Jesica Gonzalez, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

# PROCEDURAL BACKGROUND

Defendant Daniel Valdez Gutierrez was arrested in April 2023 following an altercation in a park, during which he punctured two tires on Ramiro L.'s vehicle with a knife and then swung the knife at Ramiro and Roberto M. Responding police officers found a pocketknife with a two-inch blade and a methamphetamine pipe on defendant. He was charged with two counts of assault with a deadly weapon, felony elder abuse, felony vandalism and misdemeanor possession of controlled substance paraphernalia. (Pen. Code, §§ 245, subd. (a)(1) [counts 1, 3], 368, subd. (b)(1) [count 2], 594, subd. (b)(1) [count 4], Health & Saf. Code, § 11364 [count 5].)[1]

After the conclusion of the prosecutor's case-in-chief, the court granted defendant's motion for dismissal of count 2 for elder abuse (§ 1118.1), and the jury convicted defendant of two counts of assault with a deadly weapon, felony vandalism and misdemeanor possession of controlled substance paraphernalia. Adjudication of the allegation that defendant had one prior felony conviction within the meaning of the Three Strikes law and the aggravating sentencing factor allegations was bifurcated. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d); Cal. Rules of Court, rule 4.421(a)(1)–(2), (b)(2)–(5).)[2] The jury found defendant had one prior felony conviction for assault with a deadly weapon; as to counts 1, 3, and 4, "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness"; and, as to count 4, "[t]he defendant was armed with or used a weapon at the time of the commission of the crime." (Rule 4.421(a)(1)–(2).) The trial court found as to counts 1, 3, and 4 that "defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness"; "defendant has served a prior term in prison or county jail under section 1170[,

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     All further references to rules are to the California Rules of Court.

subdivision ](h)"; "defendant was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed"; and "defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory." (*Id.*, (b)(2)–(5).)[3]

Pursuant to the Three Strikes law, the trial court sentenced defendant to an aggregate term of 11 years four months as follows: an upper term of eight years for assaulting Ramiro, a consecutive two-year term for assaulting Roberto, a consecutive 16-month term for vandalizing Ramiro's vehicle, and a concurrent term of 180 days in jail for possession of a methamphetamine pipe.

On appeal, defendant challenges his conviction for assaulting Roberto with a deadly weapon. He claims the trial court erred in instructing the jury on the *legally* invalid theory that a pocketknife could be an inherently deadly weapon. (*People v. Aledamat* (2019) 8 Cal.5th 1, 6–7 (*Aledamat*).) He also claims the court erred by failing to instruct, sua sponte, on simple assault. The People concede the trial court instructed the jury on a *factually* invalid theory, but contend the error was harmless. They dispute that there was any evidence supporting an instruction on simple assault but, assuming error, they contend it was harmless.

For the reasons set forth below, we find no reversible errors and affirm the judgment.

## FACTUAL SUMMARY

In April 2023, Ramiro and Roberto were hanging out in the park one afternoon with four or five other people drinking beer and soda. Ramiro knew defendant from the park, and defendant approached the group and asked for a drink. When the group said

---

[3] The trial court struck the allegation that defendant was armed with or used a weapon as to counts 1 and 3; struck the catch-all allegation of other factors under rule 4.421(c) as to counts 1, 3 and 4; and denied the prosecutor's motion to amend the information to allege a prior felony conviction enhancement under section 667, subdivision (a)(1), as untimely.

no, defendant grabbed some drinks and took off.  A woman subsequently alerted them that defendant was stabbing the tires on Ramiro's 2021 Highlander with a knife.

Ramiro and Roberto went over to Ramiro's Highlander.  Defendant had stabbed two tires, and he was walking around the vehicle to stab the other tires.  Ramiro told defendant to stop, and defendant repeatedly swung the knife at him from about four feet away.  Ramiro estimated defendant swung the knife 30–40 times over approximately 15 minutes.  Ramiro testified defendant threatened to kill him and defendant also swung the knife at Roberto.  Ramiro described the incident as terrifying.

Roberto also testified that defendant threatened both of them, and defendant swung the knife and tried to stab both of them.  Roberto testified his life was in danger and he used a chair to keep defendant from cutting him.  Roberto gave several different estimates concerning the distance between him and defendant when defendant was swinging the knife, but the closest estimate was eight to 10 feet, and Roberto stated that if he let defendant get any closer, defendant would have stabbed him.

Defendant started walking away after swinging the knife and trying to stab Ramiro and Roberto.  They followed defendant across the park so he would not get away, and defendant periodically backtracked and tried to stab them.  An officer arrived and spoke to Ramiro and Roberto, who then walked back to the park.

Officer Kroeger testified she responded to a call about a possible stabbing at the park.  Multiple people at the park said no one was stabbed and directed her to the location where Ramiro and Roberto followed defendant.  Defendant was detained by Kroeger and other officers.  They found a pocketknife with a two-inch blade in defendant's waistband and a methamphetamine pipe in his front pocket.

Although Ramiro and Roberto did not recall during their testimony, Officer Kroeger stated they both indicated that people recorded the fight with their cell phones.  After Kroeger made initial contact with Ramiro and Roberto, she told them to wait there, but they walked back to the park.  Following defendant's arrest, Kroeger drove back to

4.

the park; viewed Ramiro's vehicle, which had two flat tires,[4] and canvassed the area, but did not locate any anyone with cell phone footage or who witnessed the altercation.

## DISCUSSION

### I.   Instruction on Inherently Deadly Weapon[5]

The jury convicted defendant of two counts of assault with a deadly weapon or instrument other than a firearm.  (§ 245, subd. (a)(1).)  Defendant challenges only his conviction for assaulting Roberto.  He argues that the trial court instructed the jury with a legally inadequate theory (*Aledamat, supra*, 8 Cal.5th at p. 7), which entitles him to reversal because the error was not harmless beyond a reasonable doubt (*id.* at p. 13).  The People respond that the instructional error was one of factual inadequacy rather than legal inadequacy, but the error was harmless under either standard of review.  (*Id.* at p. 7.)  We agree the court erred when it instructed the jury that it could find the pocketknife an inherently dangerous weapon, but this factual error was harmless because the record does not """"affirmatively demonstrate[] a reasonable probability that the jury … found the defendant guilty solely on the unsupported theory."""  (*People v. Rivera* (2019) 7 Cal.5th 306, 329 (*Rivera*); accord, *Aledamat, supra*, at p. 7.)

#### A.    Error

Pursuant to CALCRIM No. 875, the trial court instructed the jury, "To prove that the defendant is guilty of this crime the People must prove that, one, the defendant did an act with a deadly weapon other than a firearm.  Two, the defendant did the []act willfully.  Three, when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his [act] by its nature would directly and probably result in the application of force to someone.  And, four, when the defendant acted, he had the present

---

[4]    Ramiro testified he paid $1,400 for all four tires.

[5]    Defendant entitles his first claim as a challenge to the sufficiency of the evidence that the pocketknife with a two-inch blade was a deadly weapon but, in substance, his claim, which is limited to his conviction for assaulting Roberto, is one of prejudicial instructional error.

ability to apply force with a deadly weapon other than a firearm to a person." Relevant to defendant's claim of error, the court instructed, "A deadly weapon other than a firearm is any object, instrument or weapon that is inherently deadly *or* one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury. *An object is inherently deadly if it is deadly or dangerous in the ordinary use for which it was designed*." (Italics added.)

This was an accurate statement of the law, but the evidence did not support instructing the jury on inherently deadly weapons because "a knife is not inherently deadly *as a matter of law*. Only a few items that are designed to be used as deadly weapons are inherently deadly." (*Aledamat, supra*, 8 Cal.5th at p. 8.) Defendant characterizes the error as one in which the jury is instructed on a legally inadequate theory; that is, one which is "incorrect because it is contrary to law" (*id.* at p. 7) and "of a kind the jury is *not* equipped to detect" (*ibid.*). However, in contrast with the deficient instruction in *Aledamat*, the trial court here defined an inherently deadly weapon. (*Ibid.*) The court should *not* have given the instruction because, as with most weapons, the knife was not, as a matter of law, inherently deadly and inclusion of an instruction on inherently deadly weapons was unnecessary. (*Id.* at pp. 15–16.) Nevertheless, it was harmless. (*Rivera, supra*, 7 Cal.5th at p. 329.)

## B.    Prejudice

This was an uncomplicated case. The only percipient witnesses to the crimes were the two victims who testified and the only additional witness to testify was the investigating police officer. In convicting defendant of assault, the jury necessarily rejected the defense theory that there was never any assault with a knife at all and instead believed the victims that defendant swung a knife at them and threatened them. The prosecutor did not argue that knife was an inherently deadly weapon and nothing in the record suggests the jury relied on the factually inadequate theory. (*Rivera, supra*, 7 Cal.5th at p. 329.)

6.

In asserting the instructional error was prejudicial, defendant relies on two arguments. First, defendant points out that, compared with the assault on Ramiro, his intent as to Roberto was less clear because he was further away from Roberto and he did not threaten to kill Roberto. Second, defendant focuses on the two jury notes submitted during deliberation over the allegations that he had a prior felony conviction; he committed a crime that involved great violence, great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness; and he was armed with a weapon. We are not persuaded by either argument.

With respect to the first argument, defendant's claim of error purports to be based on instruction to the jury with a legally valid theory—the knife was deadly as used—and with a legally invalid theory—the knife was inherently deadly.[6] (*Aledamat, supra*, 8 Cal.5th at p. 7.) As we have explained, because the trial court defined an inherently deadly weapon but that theory was inapplicable, the error was the instruction to the jury with a factually inadequate theory. The argument defendant advances in support of finding prejudice does not speak to potential prejudice based on an erroneous finding that the knife was an inherently deadly weapon rather than a weapon deadly as used.

---

[6] Defendant also discusses *In re B.M.* (2018) 6 Cal.5th 528, which held that there was insufficient evidence that the weapon at issue—a butter knife—was used as a deadly weapon. To the extent defendant intended to argue two separate grounds for relief, *B.M.* is readily distinguishable, as it involved a nonsharp knife intended to butter toast and B.M. used the knife to hit her sister's blanket-covered legs a few times with moderate pressure. (*Id.* at pp. 531 & 536–537.) The court concluded, "[W]e find it questionable whether a trier of fact could reasonably conclude that the manner in which B.M. used the knife was capable of causing great bodily injury. But even if B.M.'s use of the knife were capable of causing great bodily injury, there is no substantial evidence that it was likely to do so." (*Id.* at p. 539.) Here, the knife in question was sharp enough that defendant punctured two automobile tires, flattening them; there was evidence defendant was swinging and stabbing the knife at both Ramiro and Roberto while threatening them; and Roberto testified his life was in danger. Thus, defendant's conviction for assaulting Roberto with a deadly weapon is supported by substantial evidence. (*People v. Collins* (2025) 17 Cal.5th 293, 307 ["[W]e review 'the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'"].)

With respect to the second argument, during the bifurcated phase on defendant's prior conviction and the aggravating factor allegations, the jury asked what would happen if they could not agree on a true or not true finding and then asked for a readback of Roberto's testimony.  However, the jury reached a verdict shortly thereafter, which rendered their request for the readback moot.  The jury's question and readback request occurred during the bifurcated proceeding, as stated, and the jury had already found defendant guilty of all four substantive offenses.  Given that defendant did not stab either victim with the knife and Roberto did not specifically testify defendant threatened to kill him, it is possible that one or more jurors may have questioned whether the assault was committed with great violence or with a high degree of cruelty, viciousness or callousness, but we do not see how this assists defendant in demonstrating he was prejudiced by the court's error in instructing the jury, during the guilt phase, on an inherently deadly weapon.

A knife with a two-inch blade sharp enough and sturdy enough to puncture and flatten automobile tires is certainly ""''"capable of producing and likely to produce, death or great bodily injury."''" (*Aledamat, supra*, 8 Cal.5th at p. 6; see *People v. Superior Court* (*Mendez*) (2022) 86 Cal.App.5th 268, 279 [the defendant "had punctured a tire with the knife, so it is reasonable to infer that the knife was capable of inflicting similar harm on a person"].)  As *Aledamat* explained, "[U]nder the instructions, the jury necessarily found the following:  (1) [the] defendant did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force; (2) [the] defendant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (3) [the] defendant had the present ability to apply force with a deadly weapon to a person." (*Aledamat, supra*, at p. 15.)  "[T]he jury must have considered the term 'inherently deadly' to mean *something*" (*ibid.*), and "the theoretical risk is that, because the court did not define the term, the jury might have

8.

applied its common understanding to find the box cutter deadly because it is sharp and used for cutting" (*ibid.*). However, "if the jury did so, it would necessarily find the box cutter deadly in the colloquial sense of the term—i.e., readily capable of inflicting deadly harm—and that [the] defendant used it as a weapon." (*Ibid.*) "'No reasonable jury that made all of these findings could have failed to find' that [the] defendant used the box cutter in a way that is capable of causing or likely to cause death or great bodily injury." (*Ibid.*)

Here, even if we evaluated the error under the higher standard applicable to the erroneous instruction on legally inadequate theories, the reasoning of *Aledamat* would compel a finding the error was harmless. Defendant assaulted Ramiro and Roberto with a knife that, in fact, punctured and flattened two vehicle tires. No reasonable jury would have failed to find that defendant used the pocketknife in a way capable of causing or likely to cause great bodily injury. (*Aledamat, supra*, 8 Cal.5th at p. 15.) Therefore, the error was also necessarily harmless when evaluated under the standard applicable to state law errors: the record is devoid of any indication of a reasonable probability that the jury convicted defendant on the theory that the knife was an inherently deadly weapon. (See *Rivera, supra*, 7 Cal.5th at p. 329.) Accordingly, the error in instructing the jury on a theory that allowed them to find the knife was an inherently deadly weapon was harmless.

## II.     Failure to Instruct on Simple Assault

Defendant claims that because there was a factual issue concerning whether a pocketknife with a two-inch blade is a deadly weapon, as to the assault on Roberto, the court should have instructed on the lesser included offense of simple assault. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747 ["simple assault (§ 240) is a lesser included offense of aggravated assault (§ 24[5], subd. (a)(1)"]; accord, *People v. Jones* (1981) 119 Cal.App.3d 749, 754.) The People dispute the duty to instruct on simple assault arose because there was no evidence defendant assaulted Roberto without a weapon.

9.

Even in the absence of a request (*People v. Nieves* (2021) 11 Cal.5th 404, 463), the trial court's "obligation to instruct on a lesser included offense arises whenever the evidence ""raises a question as to whether all of the elements of the [greater] offense were present."" [Citation.] 'This substantial evidence requirement is not satisfied by "'*any evidence* … no matter how weak,'" but rather by evidence from which a jury composed of reasonable persons could conclude "that the lesser offense, but not the greater, was committed.""" (*People v. Wilson* (2021) 11 Cal.5th 259, 298.) We view the trial court's determination de novo (*Nieves, supra*, at p. 463), and we view the evidence in the light most favorable to defendant (*People v. Banks* (2023) 97 Cal.App.5th 376, 388).

Both victims testified defendant was swinging and stabbing a knife at them, and there was no evidence to the contrary. Thus, the jury could believe either defendant committed assault with the knife or defendant did not commit any assault. (Cf. *People v. Rodriguez* (2018) 26 Cal.App.5th 890, 900–901 [failure to instruct on simple assault was prejudicial error where the evidence raised a reasonable doubt whether inmate used his waist chains at all or as a deadly weapon in the assault, and omission of instruction forced jury to choose between assault with a deadly weapon or no assault].) Defendant argues he never threatened Roberto or came closer than eight to 10 feet of him, and the use of the knife instead focused on the assault on Ramiro and the damage to Ramiro's tires.

This argument is unavailing. There is no evidence that defendant assaulted Roberto without a weapon or with a different weapon. Roberto testified that defendant threatened both of them, and we do not perceive any material distinction between wielding the knife four feet from Ramiro and eight to 10 feet from Roberto when the one wielding the weapon was swinging it and stabbing with it. (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 90 [wielding switchblade from 10–12 feet away]; *People v. Nguyen* (2017) 12 Cal.App.5th 44, 49 [wielding large knife from 10–15 feet away]; see *People v. Chance* (2008) 44 Cal.4th 1164, 1173 ["[A]n assault may occur even when the infliction

of injury is prevented by environmental conditions or by steps taken by victims to protect themselves."].)  Roberto testified that he kept eight to 10 feet away because otherwise, defendant would have stabbed him; he used a chair as a shield; and he feared for his life. There were simply no facts in evidence to support an instruction on simple assault in this case.  Therefore, we reject defendant's claim of error.

## DISPOSITION

The judgment is affirmed.